**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**MICHAEL L. WATTLETON**,

Plaintiff,

v.

**WISCONSIN DEPARTMENT OF CORRECTIONS; CORRECTION CORPORATION OF AMERICA; PRAIRIE CORRECTIONAL FACILITY; TIMOTHY O'DELL, sued as Tim O'Dell; WARDEN GOODRICH, Assistant Warden; O'MALLY, Security Chief; SEIDL, Unit Manager; STONE, Inmate Grievance Investigator; ANDERSON, Lt.; KOOSMAN, Lt.; and JOHN DOE (number one); and C. WALTER, Correctional Officer,**

Defendants.

Civil No. 04-1602 (JRT/JGL)

**REPORT & RECOMMENDATION**

---

APPEARANCES

Michael L. Wattleton, pro se

Sarah C. Madison, Esq., on behalf of Defendants

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter is before the undersigned Chief Magistrate Judge of District Court on Defendants' collective Motion to Dismiss (Doc. No. 19) and Defendant Wisconsin Department of Corrections's Motion to

Dismiss (Doc. No. 36).  This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.  All non-dispositive Motions which remain pending in this matter are addressed in an accompanying Order.

## I.   INTRODUCTION

Plaintiff Michael L. Wattleton is presently incarcerated at the Racine Correctional Facility in Appleton, Wisconsin, but was at all times relevant to this Complaint an inmate under the custodial care of Defendant Corrections Corporation of America ("CCA") at Defendant Prairie Correctional Facility ("PCF") in Appleton Wisconsin, under contract by Defendant Wisconsin Department of Corrections ("WDOC").  (Am. Compl. at 1.)  All individual Defendants were then employed at the PCF.  (Id. at 2-4.)  Plaintiff Wattleton filed a civil rights Complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983 on April 16, 2004 alleging violation of his First Amendment right to freedom of speech and his Fifth Amendment right "to remain silent." (Compl. at 1-2.)  Upon obtaining leave of Court over Defendants' objections, Plaintiff filed an Amended Complaint on October 1, 2004 adding punitive damage claims.  (Am. Compl. at 17.)

However, Plaintiff had not yet served Defendant WDOC with process.  On October 15, 2004, Defendants' counsel filed a Motion to Dismiss

the Amended Complaint. Unbeknownst to Defendants at that time, Plaintiff effected service upon Defendant WDOC that same day. (Madison Aff. ¶ 3.) As arguments regarding Defendant WDOC had not been included in the initial Motion to Dismiss, on December 19, 2004, WDOC filed a separate Motion to Dismiss on grounds of Eleventh Amendment sovereign immunity. After obtaining from the Court an extension of time in which to respond (Order of Oct. 28, 2004), Plaintiff filed a lengthy memorandum and several exhibits in opposition to Defendants' initial Motion to Dismiss.[1] However, he did not file any response to the latter Motion to Dismiss regarding immunity.

For the reasons set forth below, the Court recommends that Defendants' Motions be granted and this matter dismissed with prejudice.

## II.   STANDARD OF REVIEW

A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, a plaintiff must show that the prima facie elements of the applicable

---

[1] In his Memorandum Opposing the Motion to Dismiss, Plaintiff raises an entirely new claim of due process violation that is not claimed or even referenced in his Amended Complaint. (Pl.'s Mem. Opp'n Mot. Dismiss at 6-7.) Plaintiff did not seek to amend his Complaint or his Amended Complaint to add a due process claim. The new claim is not addressed by this Court's recommendation as it is not part of Plaintiff's Amended Complaint upon any fair reading of that pleading.

claims are asserted in the complaint.  Hungate v. United States, 626 F.2d 60, 62 (8th Cir. 1980) (citing United States v. Employing Plasterers Ass'n, 347 U.S. 186, 189 (1954).  When considering a motion to dismiss, the court must treat all facts alleged in the claim as true and must liberally construe the allegations in the claim and the reasonable inferences arising therefrom in favor of the non-moving party, but give no effect to conclusory allegations of law.  Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994) (citations omitted); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003) (citation omitted).  The Court may grant dismissal on the basis of a dispositive issue of law, and may dismiss a claim founded on a legal theory that is "close but ultimately unavailing."  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

The Prison Litigation Reform Act ("PLRA") specifically applies to Plaintiff Wattleton's claims, providing that the "court shall . . . on the motion of a party dismiss any action with respect to prison conditions under . . . any [] Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  42 U.S.C. § 1997e(c)(1) (2004).  The statute goes on to state that if a court finds dismissal under the above test

is appropriate, it need not require the exhaustion of administrative remedies. 42 U.S.C. § 1997e(c)(2).

Defendants here move pursuant to the PLRA, which mirrors Federal Rule of Civil Procedure 12(b)(6), and assert that as a matter of law Wattleton's Amended Complaint does not set forth claims upon which relief can be granted. If matters outside the pleadings on a Rule 12(b)(6) motion to dismiss are submitted and not excluded by the Court, the motion must be converted into a motion for summary judgment. See Hamm v. Rhone-Poulenc Rorer Pharm., Inc.,187 F.3d 941, 948 (8th Cir. 1999); Fed. R. Civ. P. 12(b)(6). Any evidence in support of or opposition to the pleading that provides substantiation for, rather than merely reiterating, what is asserted in the pleadings constitutes matters outside the pleadings. See Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992).

Plaintiff Wattleton attached several exhibits to his Memorandum in Opposition to the first Motion to Dismiss that constitute matters outside the pleadings. Because the Court has crafted this Report and Recommendation without resort to the attached evidence, and because this case is not ripe for summary judgment, the Motions are properly analyzed as motions to dismiss. See Hamm,187 F.3d at 948.

## III.   FACTUAL BACKGROUND & DISCUSSION

The Court construes the facts in the Amended Complaint in favor of Plaintiff.  See Coleman, 40 F.3d at 258.  Wattleton asserts violation of his First and Fifth Amendment rights arising from an interview that took place between Plaintiff and Defendant Correctional Officer ("CO") C. Walter at PCF on March 25, 2002.  (Am. Compl. at 5.)  Wattleton was summoned from his cell to CO Walter's office during the morning, and sat down.  (Id. at 6.)  CO Walter asked Plaintiff his name and date of birth, and Wattleton answered.  (Id.)  CO Walter then asked if Plaintiff was a gang member, which Plaintiff emphatically denied.  (Id.)

Upon Wattleton's inquiry, Defendant Walter explained that Plaintiff was being interviewed because the WDOC had informed the CO that Plaintiff was listed as a member of the Gangster Disciples, and instructed the CO to interview Plaintiff to explore any connection, involvement, or level of participation with the gang.  (Id. at 6-7.)  Wattleton explained that he did not to his knowledge consort with gang members or communicate directly or indirectly with anyone regarding gangs.  (Id. at 7.)  Plaintiff contends that he did not want to engage in any kind of dialogue regarding gangs because other inmates in the office area might interpret the conversation as snitching, putting him in danger of being assaulted or even murdered; hence, Plaintiff

chose to say nothing further at the interview. (Id.) In response, the CO asked Plaintiff why he would not speak if he had nothing to hide. (Id.) Wattleton retorted that he knew nothing about "the subject" and was under no obligation to answer the CO's questions. (Id. at 7-8.)

According to the Amended Complaint, CO Walter then suggested that Plaintiff review the interview questions before deciding to refuse to answer, but Plaintiff declined. (Id. at 8.) Defendant Walter than allegedly directed Plaintiff to read the questionnaire, and when Plaintiff again refused, the CO gave an ultimatum: answer the questions or be placed in a secured, segregated unit ("the hole"). (Id.) Plaintiff refused to comply and said he would answer all questions with "no comment." (Id.) CO Walter told Plaintiff to leave the office. Wattleton asked if the CO would sign his pass so that he would not be disciplined for missing work and for walking without an authorized pass, but Walter refused. (Id. at 8-9.)

Plaintiff returned directly to his unit, where he called his parents. (Id. at 9.) The Amended Complaint alleges that officers including Defendant Lt. Koosman found him, handcuffed him, and escorted him to the segregation unit, while still encouraging him to answer the gang questionnaire. (Id.) Later the same day, CO Walter visited Plaintiff in the segregation unit and again asked if he would review the questionnaire, promising that if he did, he

7

would be released from segregation and no further disciplinary action would be taken.  (Id. at 10.)  Exhibit B to the original Complaint[2] reveals that Plaintiff spent ten days in the segregation unit as a result of his failure to cooperate at the March 25, 2002 interview with CO Walter.  (Compl. Ex. B.)

Plaintiff was charged with hindering an employee in the performance of his duties.  (Id. Ex. A.)  On April 2, 2002, a disciplinary hearing was held by Defendant Lt. Anderson, at which Plaintiff plead or was found guilty and received a "ticket."  (Am. Compl. at 10-12; Compl. Ex. B.)  As a result, Wattleton was removed from his job for a period of fifty days and lost his single cell status.  (Am. Compl. at 11.)  Wattleton appealed the outcome of the disciplinary hearing in March 2002, and received notice in May 2002 that the finding of the disciplinary hearing had been expunged from his record.  (Id.; Compl. Exs. C, D.)  Plaintiff also submitted a grievance to Defendant Stone requesting back pay for his lost time at work, but was informed that the issue was not grievable.  (Am. Compl. at 13; Compl. Ex. E.)

### A.     Eleventh Amendment Immunity for WDOC

As noted above, the WDOC moved separately for dismissal on grounds that it is immune from suit under the Eleventh Amendment of the

---

[2] When Plaintiff filed his Amended Complaint, he did not reattach the exhibits to his original Complaint.  The Court considers the original exhibits in an effort to generously construe Plaintiff's pro se pleadings.

United States Constitution. The Eleventh Amendment provides that the jurisdiction of the federal courts does not extend to suits against a state brought by individual citizens. E.g., Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996) (citations omitted).

Absent certain exceptions, sovereign immunity bars actions against a state agency such as a department of corrections, as well as against the state itself. E.g., Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curium) (string cite omitted). Accordingly, sister district courts have expressly found that the WDOC is an agency of the state as a matter of law that "enjoys the state's Eleventh Amendment immunity from federal lawsuits." Arndt v. Wis. Dept. of Corr., 972 F. Supp. 475, 477 (W.D. Wis. 1996) (citation omitted). This clear precedent should prevent Plaintiff Wattleton's claims against the WDOC from proceeding, as there is no evidence that Wisconsin has unequivocally consented to suit or that Congress has clearly abrogated immunity in this case. See, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985); Pugh, 438 U.S. at 782. Therefore, Defendant WDOC's Motion to Dismiss should be granted and the claims against it dismissed with prejudice.

### B. First Amendment Claim

In his Amended Complaint, Plaintiff Wattleton asserts that his "Constitutionally Protected" right "not to speak" pursuant to the First

Amendment and right "not to participate," presumably also pursuant to the First Amendment, were violated. (Am. Compl. at 13-15.) In their collective Motion to Dismiss, Defendants contend that because there is no general right not to speak or participate under the First Amendment, Plaintiff's claims must be dismissed as a matter of law.

The right not to speak is narrowly protected by the First Amendment, but only insofar as one cannot be compelled to express adherence to an ideological point of view that one finds unacceptable or if silence implicates some other Constitutional right such as the freedom of association. See California v. F.C.C., 75 F.3d 1350, 1362 (9th Cir. 1996) (quoting Wooley v. Maynard, 430 U.S. 750, 714-15 (1977)), cert. denied, 517 U.S. 1216 (1996); see also W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 641-42 (1943); NAACP v. Alabama, 357 U.S. 449 (1958). Other courts have addressed the issue of First Amendment rights in a criminal law enforcement context and found that while all investigative action implicates the First Amendment to some degree, no First Amendment balancing test is required before investigation. See Reporters' Comm. for Freedom of Press v. A.T.&T Co., 593 F.2d 1030, 1059 (D.C. Cir. 1978). The Court agrees with Defendants that there is no generalized right not to speak recognized in federal law.

Accordingly, Plaintiff's claims that rely on such a right should fail as a matter of law, and Defendants' Motion to Dismiss should be granted in this regard.

### C.     Fifth Amendment Claim

Plaintiff also contends that his right "to remain silent" under the Fifth Amendment was violated by Defendants. (Am. Compl. at 13-15.) In the joint Motion to Dismiss, Defendants assert that the case of Chavez v. Martinez, 538 U.S. 760 (2000) controls Plaintiff's case and requires dismissal because a self-incrimination claim only arises in the context of a criminal case. Defendants alternatively argue that Plaintiff's claims must fail because the Fifth Amendment's prohibition against forced self-incrimination does not apply to speech that would incriminate only other persons, and Wattleton maintains that he himself is innocent of any crime related to the gang questionnaire. Because the Court agrees that Chavez disposes of Wattleton's Fifth Amendment assertions, it need not explain the merits of Defendants' second, and also adequate, ground for dismissal of this claim. Likewise, the Court does not reach the merits of Defendants' third counter-argument that Plaintiff was not legally "compelled" pursuant to the Fifth Amendment.

In Chavez, also an action pursuant to 42 U.S.C. § 1983, the United States Supreme Court held that "mere compulsive questioning" by a law enforcement officer of a criminal suspect does not violate the self-

incrimination clause of the Fifth Amendment.  538 U.S. at 767 (citations omitted).  While such statements may not be used against the suspect in a later criminal case, it is not until such use that the self-incrimination clause is violated.  Id.  A criminal case, in this context, requires at least the initiation of legal proceedings, and does not encompass the entire criminal investigatory process.  Id. at 766 (citations omitted)  In attempting to define "criminal case," the Court noted: "We need not decide today the precise moment when a 'criminal case' commences; it is enough to say that police questioning does not constitute a 'case.'"  Id. at 766-67 (citations omitted).  Hence, the Chavez Court found that the plaintiff "was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case," and "[n]or was he ever placed under oath and exposed to the cruel trilemma of self-accusation, perjury or contempt."  Id. at 767 (internal quotations and citations omitted.)

      In the present case, Plaintiff Wattleton was never made to be a witness against himself because his statements, or lack thereof, were never admitted as testimony against him in a criminal case as that is defined in Chavez.  See id. at 766-67; (see also Am. Compl. at 11-12.)  Further, he was never placed under oath and forced to chose among self-accusation, perjury,

12

and contempt. See Chavez, 538 U.S. at 767. Accordingly, Plaintiff's claims under the Fifth Amendment should not survive, and Defendants' Motion to Dismiss should be granted in this regard.

### D. **Allegations of Conspiracy**

Although Plaintiff's Amended Complaint denominates this matter as a "civil rights action . . . for damages and relief under 42 U.S.C. § 1983," (Am. Compl. at 1) arising from the First and Fifth Amendments, he makes allegations that Defendants conspired to violate his civil rights (id. at 13-15 ¶¶ 1, 3, 4). An action for conspiracy to violate civil rights must be brought under 42 U.S.C. § 1985. Even assuming that Wattleton, acting pro se, intended to raise a claim of conspiracy pursuant to § 1985(3), the Court recommends that such a claim fails.

Plaintiff's Amended Complaint offers bare allegations of conspiracy, without alleging any specific facts to support such a conclusion. (Am. Compl. at 13-15 ¶¶ 1, 3, 4). Construing the pro se pleadings liberally, Plaintiff's allegations are insufficient to state a claim because they are purely conclusory. See Martin v. Aubuchon, 623 F.2d 1282, 1285-86 (8th Cir. 1990) (citations omitted). Moreover, as Plaintiff's conspiracy claims as alleged are necessarily dependent upon his primary claims pursuant to § 1983 (see Am. Compl. at 13-15 ¶¶ 1, 3, 4), any § 1985 claim should be dismissed along with

the § 1983 claims. Accordingly, insofar as Wattleton has alleged claims pursuant to 42 U.S.C. § 1985, they should be dismissed with prejudice.

## IV. CONCLUSION

Because Defendants have demonstrated that Plaintiff's Amended Complaint fails to set forth any claim upon which relief can be granted, the Court recommends that this matter be dismissed with prejudice. See 42 U.S.C. § 1997e(c)(1).

Based upon the above, and upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

(1) Defendants' Motion to Dismiss (Doc. No. 19) should be **GRANTED**;

(2) Defendant Wisconsin Department of Corrections's Motion to Dismiss (Doc. No. 36) should be **GRANTED**; and

(3) The matter should be **DISMISSED WITH PREJUDICE**.

Dated: January 21, 2005

                                             s/ Jonathan Lebedoff
                                             JONATHAN LEBEDOFF
                                             Chief United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties by February 9, 2005, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party*s brief within ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.